Next case is number 2010-1394, Allergan Incorporated against Athena Cosmetics and others. Mr. Perry. Thank you, Judge Newman. May it please the Court. The district court in this case ruled that Allergan lacked standing to pursue its state unfair competition claim because its claim for monetary relief, which the district court characterized as one for lost profits, and the defendants agreed with that characterization, did not sound in restitution under California law. Is there a question in your mind if the district court judge here had the benefit of the Kwikset and the other, what's the other? Clayworth, Your Honor. Clayworth, that he would have ruled differently on the standing question? There is no question in my mind, Your Honor. The Clayworth and Kwikset decisions from the California Supreme Court have resolved the standing question in this case in our favor. They don't necessarily deal with the second question here, right, with respect to restitution, whether your claim would satisfy that kind of damage. They actually make the second question unnecessary to decide. There's no reason to decide restitution on a motion to dismiss, which is what we had here. There was no motion to strike the claim, and the Clayworth court at the very end of its opinion said the entitlement to restitution can be sorted out in the further proceedings. And here, too, if the court were to reverse the standing determination, as we submit it should under Clayworth and Kwikset, restitution can go back and the case can go on to discovery and proof, and either that claim survives or it doesn't survive. But it doesn't need to be decided at this stage in the proceedings. So I guess I'm going to ask them, obviously, this question, but I'd ask you then, what do you anticipate or understand then to be the argument against you in terms of at least the injunction question? Your Honor, as to the injunction question, the California Supreme Court has delivered what I would call a one-two punch. First, it issued Clayworth, which we thought resolved the whole case. In fact, we called them up and said, let's send it back to the district court. We don't need to trouble the Federal Circuit with this. They declined that. They then filed their briefs, which the court has, of course, read, arguing that Clayworth, because it didn't mention these previous decisions, Citizens and Walker and Buckland, must have left them intact. We think that was wrong, and we pointed that out in the reply brief. And then the second punch, the right cross or the haymaker, came in with the Kwikset decision, where the court said, the California Supreme Court, which, of course, has the last word on these questions of state law, said, we are expressly disapproving the state decisions, Citizens and Buckland, and impliedly disapproving the Ninth Circuit opinion in Walker. The defendants, in their scramble to avoid Kwikset to directly answer your question, Judge Provost, have offered the court four reasons, and these are laid out in their 228J letters that they filed in February. First, they say, the cases disapproved in Kwikset did not affect the validity of the district court decision. That's in the Life Tech letter. I found that a remarkable statement. The cases disapproved in Kwikset, Citizens and Buckland, were the sole basis for the district court decision. Well, I think that just to move it, I mean, I think there's some suggestion in my read of those letters that there were alternative, and I obviously will ask them, that there were alternative bases upon which the district court ruled, such as a preemption issue related to infringement. Is that your understanding? They are offering alternatives, although if the court studies, as I'm sure it has, the district court's actual ruling, it was expressly and solely based on this notion that the monetary relief sought by Allergan was lost profits, which was not restitution, and therefore they could not have standing under those now-disapproved precedents. The plaintiffs have tried to spin, excuse me, the defendants have tried to spin that now in this court in their 28 J letters and said what the court actually ruled is that Allergan has no economic injury within the meaning of the UCL as interpreted in Kwikset. They don't have a citation to the district court ruling for that because the district court didn't make that ruling, and in fact the district court quite clearly said, and this is at page 7 of the joint appendix, the harm to Allergan remains simply lost profits, and in their briefs, each of the three defendants agreed that Allergan has a lost profits claim in this case. They characterized it as a damages claim, which of course under the common law it is, but they agreed that we have that claim, and the lost profits claim, Your Honors, is very simple. Allergan has the only FDA-approved product for eyelash growth. They are selling non-approved products for eyelash growth. Every sale to them takes away a sale, potentially, to Allergan. That is a straightforward lost profits claim the way that this court has seen in any number of federal contract cases, common law cases, patent cases, and elsewhere. Well, what about the language, and this is quoted, actually, I think in Kwikset, where they do refer to the statement in Californians for Disabilities Rights, and they quote Prop 64, and it seems to confine the cause of action to anyone who had business dealings with the defendant, and in your situation, which is the classic competitor situation, it's hard to see how that fits into the business dealing category. Your Honor, that's another one of their new alternatives that they, of course, didn't argue in the district court. The business dealing language, the statement of purpose of Prop 64 says that it was intended to preclude lawyers from filing suit on behalf of clients who had no business dealings and other things with the defendants. The statement of purpose under California law is not binding on a court or anyone else. That's well established under the Amway decision and others. What's binding on the courts is the actual amendments to the UCL in 17-203 and 17-204, which have nothing to do with business dealings or anything else. They simply say injury in fact and causation. And they clearly deal with competitors, right, which competitors generally would not be described as having business dealings. Absolutely, Your Honor. In fact, in the quick set decision itself, the court said at page 8 that the UCL is designed to protect both consumers and competitors, and there's a long line of California cases. The Cell Tech case, which is cited in all the papers, the Cruz v. Pacific Care case, cited in the California Supreme Court, which hold that competitors have standing to sue under the Cartwright Act. And in fact, excuse me, under the UCL. In Clayworth, footnote 25, the court went out of its way to say that standing under the UCL is at least as broad as standing under the Cartwright Act, which is the state antitrust law, which of course includes competitors. They are in fact the principal prosecutors of private Cartwright Act claims. So I gather, don't want to interrupt your train of thought, but throughout all of this, I gather then that the patent has nothing to do with the unfair competition claim? That's correct, Your Honor. The unfair competition claim is based on the failure of these defendants to register or to seek approval of their products with the state and federal drug regulators. There is a separate patent claim. It's a failure to register. One of the points that they raise is the question of, in fact, the private attorney general philosophy of enforcing a federal law by someone who asserts a competitive relationship. Is that right? And in California law under the UCL, that is permitted. The California Supreme Court held that in a case called farm-raised salmon, that it is absolutely permissible for a private person withstanding, who has suffered an injury in fact, to bring these suits. And in fact, the Quick Set Court offered an example that is on all fours with this case, and I know lawyers use that phrase a lot, but this one really is. The court said, if somebody sells a counterfeit Rolex, and these defendants are essentially selling counterfeit Lattice, OK, if someone sells a counterfeit Rolex, quote, the consumer, as well as the company that was deprived of the sale, that is Rolex, has been economically harmed and has standing to sue. You sell a counterfeit Rolex, both the purchaser of the fake watch and the producer of the genuine article can sue. Here- I don't understand where the counterfeit analogy fits, unless you come back to the patent infringement aspect. No, Your Honor. Our claim is it's not a counterfeit. It is that we have an FDA-approved product. Our argument is that FDA approval is required for all these products. They are selling a product without obtaining that FDA approval, therefore diverting sales from us, just like a counterfeit Rolex seller. Just like a counterfeit, but it's not a counterfeit product. It's not a counterfeit product, Your Honor. The point being made is the competitor, as well as the consumer, there are two people withstanding. And in fact, it will often be the competitor that has the most incentive and resources to sue, which is why in antitrust cases, the competitors can sue. But with respect to the patent question that Judge Newman raised, there's a potential for an overlap in damages here, is there not, to prevail on both claims. There's a significant overlap. Your Honor, if they both proceeded to judgment on monetary claims, the patent damages could not exceed a reasonable royalty. And I'm sure the court is perfectly capable of avoiding a double counting. We're not seeking a double counting. But the measure of damages, their argument on this motion has been that the measure of damage would actually be quite different, which is the diverted sales. Well, is it diversion or is it lost profits? Well, Your Honor, we've made a claim for both lost profits and a diminution in the asset values, that is the suite of intellectual property, which includes the advertising, by the way, which isn't a patent claim at all, that their sales without securing the necessary approvals have damaged our suite of rights. More importantly, though. But you could always offset. I'm sure the court would always offset those damages. Exactly, which is why the reasonable royalty component of the patent law would at least kick in. More importantly, the UCL is primarily an injunctive relief statute. That's what the court held in both Kwikset and Clayworth. The primary relief that Allergan is seeking here is an injunction to stop these sales. That is relief you'd also have available under the patent. Well, if there are patent infringement. But this is a totally separate claim, as I indicated earlier to Judge Newman. It is hinged on the failure to seek or obtain FDA and California state regulatory approval for the sale of these drug products. Indeed, a totally separate state law claim, which seems, from what you've clarified, to be totally unrelated to whether or not your client's patents may be infringed. And I'm trying to understand the propriety of Joinder, appellate jurisdiction. Joinder, the trial court, is because the common nucleus of operative facts. It is the sale of these products, which we claim is both the patent infringement. That's what I asked. Where is the common nucleus of operative facts if patent infringement has nothing to do with this relationship? Your Honor, our position is that the sale of the defendant's products, the non-approved drugs, is simultaneously. You're saying that the fact that the FDA hasn't approved it, totally unrelated to issues of patent infringement, nonetheless makes it a federal case subject to patent law jurisdiction? Your Honor, our position is the same sale is simultaneously an infringement of our patent rights, or an inducement or contribution to infringement of our patent rights, and a violation of the unfair competition law because they didn't obtain the necessary drug approvals. The exact same sale, though, is the challenged conduct. That is the common nucleus of operative fact that brings the claims together under traditional Joinder law. And the only reason we have jurisdiction over this purely California issue is because you've also alleged patent infringement. The patent claim was there first, and the Colt and Vornado and other cases make clear that as long as the basis of jurisdiction in the district court is under Title 35, then the pending state law claims are properly appealed to this court. What's the status of the case now? Has it been held in abeyance? Is it in this, or is it proceeding? It is awaiting the decision in this case on this issue so that they can go forward. And remember, this is a question of standing. It's a very threshold question, and our position is that Allergan should have an opportunity to prove up this claim in conjunction with the others and proceed. Judge Newman, if there is a separation or something, I'm sure that the defense will agree to it. But that's what I'm trying to understand. We don't have a final judgment on the entirety of the case. It's a 54B judgment, Your Honor. So it is final as to this claim. But you would still have standing under the patents. Absolutely. The patent claim remains pending in the district court. We have standing. We will continue to prosecute those claims. This, however, is a separate ground for relief. Some of the defendants are claiming that they don't infringe, that they have defenses to infringement. It is a separate ground for relief authorized by California law. And the only question before this court really is to whether Kwikset and Clayworth should be applied, as we submit they are, and let that claim go forward. The merits of the claim are not before the court. The relief is not before the court. The only question here is standing. And standing has been decided by the California Supreme Court. And so what happens to the infringement claim? It's over under 54B. No, Your Honor. It's proceeding, although no action has been taken pending the appeal. It remains pending in the district court. 54B, the court carved off this claim separately, entered a final judgment on the state law claim, and allowed the federal claims to proceed. But the decision on this point, really, from what you say, has no relation to whether there is or isn't infringement. That's correct. In one sense, Your Honor, on the other hand, the course of conducts of these defendants is what will be put on trial. Whether or not they sold the products, what they contain, whether or not they got the approvals, whether or not they infringed the patent, to try them in two entirely separate proceedings, I think, might be duplicative. Therefore, having them all go on the same course makes sense. And certainly, the district judge has seen it that way. Well, that's what I'm trying to understand, what's duplicated. So far, I haven't heard anything. Your Honor, as I said, the challenged act at its core is the sale of these drug products by the defendant. It's both an act of patent infringement and an act of unfair competition. But the act itself, the sale, the marketing, the delivery, the provisioning, is the same. It's the same challenged act. You could have brought this even if you did not have the patents involved. Yes, Your Honor. Because you have the approval of the FDA, the federal FDA, and the state FDA for the product. But you would be in the Ninth Circuit, not here, if you didn't relate to the patents. That's correct. If it was a separate action. If it were a separate action, it would be in the Ninth Circuit, because the jurisdiction of this court attaches to the patent claim. That's correct. All right. We'll save you rebuttal time. Let's hear from the other side. Thank you, Your Honor. You've divided it up. I think Mr. Benson, are you first? Yes, Your Honor. Good afternoon, Your Honors. My name is Steven Benson from the law firm of Katten, Meech, and Roseman in Chicago. And I'm appearing on behalf of Athena Cosmetics, Incorporated, PharmaTech International, Incorporated, and Northwest Cosmetics, LLC. The appellants do not have standing to bring a UCL claim. The district court was correct. Clayworth and Kwikset do not save appellants' claims. In particular, as the district court correctly found, appellants do not have standing to bring a UCL claim for monetary relief, because monetary relief under Section 17203 is now and has always been limited to restitution. Let me start, though. The first thing we've got to deal with is an injunction. We've asked for an injunction here. Do you read Kwikset as disposing of the question about whether or not they would have standing at least to seek an injunction? Do you agree with that? Appellants do not have standing to seek an injunction. OK, so why don't you tell me why? OK. As an initial matter, the district court correctly held that the previous California Supreme Court decision of Korea Supply governed. In Korea Supply, there were two competitors. There was a bidding for a construction contract. The plaintiff alleged that there were unfair business practices by the defendant that precluded it from winning the bid. The California Supreme Court found that that allegation was not a sufficient allegation of lost money or property because it was nothing more than a contingent expectancy of payment from a third party. The district court below at JA7 analyzed Korea Supply and found that the facts of this case were indistinguishable. In other words, the allegations as they sit. I understand what you're saying. And I read the district court to be relying on Korea Supply too. But that was with respect to whether or not the damages that they were seeking fell into the S17-203 restitution bundle. I didn't read that as being necessarily. I read Kwikset as dealing more with the question of whether or not they have an injunction, notwithstanding whether or not they have restitution damages under 203. So I guess I'm still not hearing, forget Korea Supply, tell me about the cases like Kwikset and the cases that the district court relied on with some trepidation, even suggesting that, boy, I'm not in love with this law, but this seems to be what the cases say. Didn't Kwikset disabuse him of that notion? It did not. First came Clayworth. And Clayworth is 233P3D1066. At 1087, the standing requirements after Proposition 64 were defined. First, there has to have been a business relationship between plaintiff and defendant. And second, there must be a showing of lost money, injury or fact, and lost money or property, and a causation element showing that the alleged unfair competition causes the lost money or property. Kwikset reaffirms that at WL240278-4, cites the Clayworth opinion. And in three different instances in Kwikset, the requirement for business dealings between the plaintiff and the defendant are reiterated. In the context of Korea Supply, there is no business relationship between the contractors, the competitors in that case. And we submit to the court that Korea Supply would come down the same whether the parties were seeking an injunction in addition to their restitution or whether they were not. Now, appellants in this case have never argued there is a business relationship between any appellant and the appellees. Well, for a direct business relationship, because we're told that having lost the business to the appellee, that they otherwise would have made those sales, and that that competitive impact suffices under the statute. That highlights another fundamental flaw of appellant's claim. As an initial matter, as the district court correctly pointed out at JA8 footnote, I believe it was footnote three, for the first time in appellant's brief below, they argued they had lost money or property on the basis of an infringement of their intellectual property. Now, the district court realized that that was untimely, but nevertheless held that to the extent the lost money or property being alleged relates to the infringement of their intellectual property, that claim is preempted by the Federal Patent Act. And that is completely correct. Now, on appeal, appellants have taken a different argument and imported it into their claim to try and overcome the preemption. And that argument is that on the basis of having FDA registration, they are entitled, that they have a right, is the word that they use, they have a right to 100% of appellee's sales. Now, nowhere in the argument. But it certainly show a competitive effect without establishing they'd have made 100% of the sales. Is your argument the same? It is. Nope, as an initial matter, nowhere do they identify authority, much less statutory language in the Food and Drug Act, that establishes having an FDA registration for a pharmaceutical product gives market exclusivity for any product that the FDA registrant may deem related to their own product. In this case, because this relates, this comes right back to Korea Supply. In this case, there is, at the very most, what has been alleged is a contingent expectancy of payment from a third party. And under the California Supreme Court decision of Korea Supply, that is an insufficient, that is an insufficient allegation of lost money or property. But the question that I tried to ask was assume that they don't have to establish exclusivity, that they'd have made 100% of the sales, but only that they would have made not insignificant sales. Well, we would respectfully submit, Your Honor, that it is impossible, in view of Clayworth and Kwikset, to separate the business dealings requirement from the requirement for lost money or property. So assuming arguendo, which we do not concede, there is lost money or property, that does not save the threshold issue that is the fundamental flaw of Appellant's claim, and that is that there is no business dealings between the parties. And I see that I've gone over my time. But Mr. Benson, why should there be a business deal among the parties? Because that is what I apologize for. Let's go back to your original premise, that unless there was a registration with the FDA, the federal FDA and the state FDA, could you sell your products in California or anywhere else in the United States? I'm sorry, Your Honor. Could you repeat the question? I'm not sure I understand. If you do not, if your product is not registered with the FDA approval, and it doesn't have California state FDA approval, could you sell your product in the state of California? Our clients, some of the appellees in this case do, in fact, sell their products. I mean, there has never been an action by the FDA or the state of California seeking to prosecute our clients for selling a drug without FDA approval. Is that a condition preceding to the plaintiffs seeking their protection from competition and have standing because you are selling into their marketplace of their approved product by the FDA? I'm not sure I understand the question. Their standing is based upon competitive interest, is it not? Well, I think, you know, Allegan's argument all along has been, look, let's look at what this statute is called. It's called an unfair business statute. So therefore, we're competitors. If they're doing something unfair, we must have standing. And I think what's being lost is that the context of the statute at issue, this is a California statute, Proposition 64 restricted standing. And at footnote 21 of Quick Step, they say, Proposition 64, the voters intended to restrict standing where there has not been any transaction between plaintiff and defendant. But they reserved standing for those who had had a business dealing with the defendants. And in this case, appellants fail in that fundamental threshold issue. And I should also point out, there are many applees in this case. And some of those applees do nothing more than sell an ingredient that goes into the products that are being sold. And those applees do nothing. None of the acts alleged in the complaint are undertaken by those defendants. But yet, they're lumped in together. But that doesn't answer the question of whether or not they have standing to bring this complaint. I mean, you may be able to move on. That is the case. I mean, there's no allegation of an unfair competition with respect to those applees. But there'd be defendants in the patent infringement case. There are defendants in the patent infringement case. But that's a different issue. That is an issue of federal patent law. It is not an issue of the California unfair competition statute. Well, because you've divided up the arguments, are your colleagues going to talk about the same issue or something different? Well, the way we've arranged between our, my colleague Mr. Jeffrey Weiss is going to address more fully the business dealings relationship and how that is consistent with prior rulings and how that is dispositive of this issue. You know, obviously, these being all of us are representing our clients, and we want to be heard. And I don't think that any given applee is limiting themselves. However, we've tried not to duplicate efforts too much. All right. Well, then let's move on. I think we can ask the same questions of all of you. Thank you, Mr. Benson. Mr. Weiss? Thank you, Your Honor. May it please the Court. I wanted to get right to the question that Judge Prost raised at the outset of the argument. With respect to this business dealings issue. Well, let me, before you get into business dealings, I want to talk about career supply a little and restitution, because I really am trying to fairly read what the district court said. And it did have a lengthy discussion about career supply, and that was under the section dealing with restitution, in its opinion, not injunctive relief. It again refers to it in injunctive relief, but only for the point of the lack of entitlement for restitution. And at Kwikset, they conclude, we hold ineligibility for restitution is not a basis for denying standing under section 17204, and disapprove those cases that have concluded otherwise. So I'm not sure I'm seeing how the district court's reliance on career supplies is dispositive of whether or not there was standing to bring an injunction in this case. I don't disagree. I don't disagree, Your Honor. So they have standing to bring an injunction? They do not, Your Honor. Why? Because of Clayworth and Kwikset. Both cases, Clayworth, at the outset, very clearly in a positive manner at pages 788 to 789, expressly recites that there is a requirement that there be business dealings between the plaintiff and the defendants in order for there to be a claim for, in order for there to be standing under the UCF. Can competitors, do competitors by definition ever have a business dealing? I mean, in terms of if they're named competitors, they compete with the other side. Is competition sufficient business dealing, or is that something else? It is not, Your Honor. And simply by virtue of it. Aren't these cases chock full of references to how we're trying to deal with and protect competitors? Correct, Your Honor, but the UCL is a broad statute which confers standing in part on private plaintiffs who meet the very strict tests announced in the Mervyn's case, in Clayworth, and in Kwikset, but also on the state attorney general and on local public officials. And so the language that my colleague referred to earlier about in Kwikset about that this is also a statute that protects competitors, that's correct. But that paragraph is talking about the broad remedial purpose of the UCL. The private standing portion, however, is limited as made abundantly clear both in Clayworth and Kwikset to those who have had business dealings. Clayworth is expressly articulated at pages 789. There's a three-part test that's provided and then applied. The first prong of that three-part test is that there need to be business dealings. In Kwikset, it's stated in the negative that the amendments to the UCL eliminated standing for those who have not had business dealings with the defendant. And so, and I want to be clear about what we're trying to do here. In my view, the restitution aspect of the district court's decision is absolutely correct based on career supply. That has not been changed in any respect by either Kwikset or Clayworth. With respect to the injunctive relief portion, I do believe that we are asking for affirmance on different grounds than those recited by Judge Selma. I think that what we are asking for is affirmance based on the absence of business dealings between these parties. And to be clear, what the appellant has done in this case is they have argued that Clayworth and Kwikset do not recite a business dealings requirement. They have not argued that, yes, there is a requirement, but we can satisfy it as competitors. That has not been the argument in any of the filings with this court. And it has not been the argument today that there is a business dealings type of relationship between these entities. And there's nothing in these cases to suggest that competitors have a business relationship. And in that sense, I do think that, well. So tell me where in Kwikset they require business dealings? It's at page 317 of the decision. I'll just quickly read. We conclude Proposition 64 should be read in light of its apparent purposes, i.e. to eliminate standing for those who have not engaged in any business dealings with would-be defendants and thereby strip such unaffected parties. That's at the very outset. It's the third paragraph of the court's decision where it's explaining what its ultimate holding is going to be in the case. And then it proceeds with its analysis. But they put that front and center. And that language comes from Proposition 64. It was first discussed in the Mervyn's decision in 2006. And then Clayworth, I think, has really brought much more emphatically to the front and made very expressly a standing requirement. And then Kwikset takes that even, well, maybe not further. But in the same vein, continues to expressly emphasize that as a standing requirement. And by the way, there was some assertion before that appellants have been shifting grounds. I mean, the red brief filed, I think, by all of the appellants, but certainly by our clients, Cosmetic Alchemy, is virtually entirely focused on this business dealings issue. There's been no shift of position. Well, isn't that really a narrow reading of Kwikset, saying, in effect, that Proposition 64 just plainly preserves standing for those who had had business dealings with a defendant, right? That's correct, Your Honor. And then subsequently, they go forward, say it suffices to say that in sharp contrast in the state of the law before passage of Proposition 64, a private plaintiff filing suit now must establish that he or she has personally suffered such harm, economic harm. So if you establish economic harm, where is the restriction of the dealings with the defendants still a restriction based upon Proposition 64? I think this expressed statement at the outset that standing has been eliminated. Those are very strong words, that standing is eliminated for those who did not have business relations. But then they go on and attenuate that statement later on in the opinion. You can't just read the beginning of the opinion without reading the entire opinion. Well, I think that the whole opinion needs to be read in light of the fact that that is a business dealings case. Clayworth is a business dealings case. Every case decided in this area by the California Supreme Court in which standing has been found has been a business dealings case. Korea Supply is the one example of a decision by the California Supreme Court in which a competitor tried to bring suit under the UCLA and was denied standing to do that. Now, I agree with Your Honor that that denial of standing was with respect to the restitution claim. There was no injunctive relief claim asserted there. I think that's absolutely correct. And that's why I do think we're asking for affirmance on different grounds based on these clear holdings. Where is the restitution different from economic injury? Isn't restitution and economic injury one and the same? Well, I think that's been the struggle. We certainly had thought so prior to Kwikset in particular. I think Clayworth still seemed to us to suggest that it still needed to be a restitutionary type of injury. The mere fact that you had mitigated your loss or received those monies back, that wasn't going to stop you from having an injunctive relief claim. Well, the restitution seems to be more attuned to a relationship among the defendants and the plaintiffs. That's correct, Your Honor. Economic injury is more between a plaintiff competitor and a defendant competitor. I disagree, Your Honor. In Kwikset, they actually provide, I think, five or six examples of economic injury. I believe they're cited in the letter brief submitted by my colleague, Mr. Benson. And all of those are, in essence, business relationship types of harms. That you paid money for a product that you wouldn't otherwise have purchased if the advertising had not been misleading. That you provided money to somebody. Is there a business relationship between a competitor and someone who advertises a product? There's not, Your Honor. There isn't. There's not. So why would we need a business relationship in order to have standing under the Unfair Competition Act, even after Proposition 64? I'm sorry, you're saying, why should there be that requirement? Is there still such a requirement after Proposition 64? Correct. I think Proposition 64 is the source of that requirement. As interpreted most primarily in Clayworth and Kwikset, that if you don't have that relationship, you don't have standing. Now, again, that doesn't mean that the California Attorney General can't bring a cause of action. It doesn't mean the FDA can't bring its own claim. But it does mean that these individuals do not have standing. Now, of course, if they have a patent, they can bring a claim under their patent. What about a competitor that we have here? A competitor does not have standing, because they cannot satisfy the business dealings prong. The business, you need to have prior arrangement of business dealing prongs among the people who are suing each other. That's correct, Your Honor. That's correct. And I think the way that this has evolved, and there's a discussion of it in some of the cases, I think in Krauss we cite too. But that's not in Kwikset. I don't read Kwikset that way. I think that language at the outset of the opinion, which I regard as sort of summarizing language of the opinion, expressly states that standing has been eliminated for those who do not have business dealings. A business dealing in what respect? Through advertising for common purposes, or competitors who file for the same contract? Or bidding on the same contract? I apologize, Your Honor. Proposition 64 gives several express examples. One is that the plaintiff has viewed the defendant's advertising. A second is that the plaintiff has been induced to purchase the defendant's goods or services. Those are clear examples of the kinds of business dealings that qualify. And those are the kinds of cases that we see. What about cases where you're selling a product which is not registered, and someone who does have a registered product is injured? You're saying that there's no business relationship at that point, establishing standing. That's correct, Your Honor. And I think also Prop 64 is clear that only the attorney general is supposed to have the ability to assert statutes of general application. And that's what's happening here. If you look at the complaint, Joint Appendix 7609-7610, this plaintiff is trying to act as a private attorney general to enforce the California Health and Safety Code. That's the province, in the wake of Prop 64, that's the province of the state attorney general. That's not the province of private plaintiffs. And that's one of the harms that Prop 64 came to remedy. But he's not here as a member of the public. He's here as a party that is injured by what is asserted to be a violation of law. It seems to fit, can fit, into the proposition. Well, prior to Prop 64, the way that the statute was worded, a plaintiff could assert claims for its own interests or the interests of its members or on behalf of the public. Prop 64 did away with that. And now there is this requirement of a loss of money or property, which I do think gets at the restitution sort of concept that Judge Garris had talked about a moment ago. But again, the cases are requiring this business dealings thing, this business dealings relationship, as part of this effort to curtail jurisdiction in light of Prop 64. And we're not simply relying on what's in the Prop 64 preamble. What we're relying on is what the California Supreme Court has said is the proper manner to interpret the UCL in light of those amendments. Neither of those cases actually involved competitors, right? They all involved consumer challenges, right? And Kwikset wasn't a group of consumers who were the plaintiffs. That's correct, Your Honor. Kwikset was a- Correct. That was a plaintiff who purchased a lock. And in Clayworth, it was a pharmacy who had purchased price-fixed pharmaceuticals from a wholesaler. OK, now we've run well over time. Are there any remaining issues, Mr. Washington, that we haven't covered? Thank you, Your Honor. Thank you, Mr. Weiss. Very briefly, Your Honor, the only issue that really remains is sort of an explanation for why the argument has been somewhat disjointed. And that's because the two key California Supreme Court cases were decided after the motion was submitted, after the motion was decided, and frankly, after this case was briefed. So that much of the argument you're getting, unfortunately, isn't supported by everything that's in our briefs. But let me say this. Both Clayworth and Kwikset do stand for the proposition that there must be a business relationship. And in both cases, the California Supreme Court, which is the court that decides this issue, this is not standing in the federal constitutional sense of somebody who's got an actual injury. It's a statutory standing that is defined by the California legislature. It was defined by Prop 64. And it's been now twice interpreted by the California Supreme Court as requiring a business relationship, because the very proposition that the Californians voted for in the voting booth specifically said that the proposition was designed to eliminate parties who file lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant. This is a consumer statute. And consumers who are injured have standing to sue. Mr. Washington, let me ask you a very simple question. If Allegan had gone out and bought your product in the open market, would they have standing? Without more, I can't say that they would. Well, you've advertised it. They've bought it. You just said that. Only the defendant can bring the action. The reason I have to know more is I have to know what their substantive theory was. But having bought our product, that would create, properly tied to an injury that resulted from the purchase, that would create standing. Well, you advertised your product for eyelash growth. No, we don't. Well, whatever you advertise it for. And they go out and they buy it. Induced to buy it by your advertising, would they have standing to sue? Yes. Under proposition. I think they would. I think they would. But that's not the case we have here. I understand that. With that, I'll submit, Your Honor. Thank you. OK. Thank you. That's putting the elephant through the eye of the needle, I think. Mr. Perry? Your Honors, this business dealings thing, Mr. Weiss said, there's a three-part test. Quickset answers this question. Page 9 of the slip opinion, they say it's a two-part test. They said the plain language of the clauses, that is the actual statute, not the preamble, suggests a simple test. Quote, to satisfy the narrower standing requirements imposed by proposition 64, a party must now, one, establish economic injury. We've done that. And two, show that it was caused by the defendant's conduct. We've done that. Period. There is no three. There is no introduction. There is no throat clearing. There is no business dealings. That's not in the test. It's not in the statute. It's not in the cases. They made that up. What the case actually says. But the case is including Quickset to reference this business dealings. Thank you, Judge Prost. Let me turn to what the cases actually say. Clayworth says, the intent of this change, the new standing requirement, was to confine standing to those actually injured. That includes us. And to curtail the prior practice of filing suits by persons who had no business dealings. If the voters had wanted to, quote, eliminate no business dealings, they could have put in the UCL itself, you must have business dealings. They didn't do that. Instead, they put in, you must have economic injury. And what Quickset says is economic injury is sufficient. Then the Quickset court goes on and very helpfully gives us four examples of the economic injury that will suffice. They say there are innumerable ways, and it's not an exhaustive list, but they list four. Two of them we have alleged in this case. One, diminution of asset value. Two, lost profits. Those are classic economic injuries. Judge Newman, one lost sale would be sufficient. They quote then Judge Alito's statement that a trifle, a legally protectable trifle, but a trifle is sufficient, that the quantum of injury need not be great, just one that we have served. One purchase, one sale, one diverted sale is enough. But of course, for what I was trying to explore, and perhaps there is no bright line, if the only reason for the lost sale is the patent, the existence of the patent, how that fits in with the argument that there is, after all, preemption, and there's only one issue. Your Honor, if the claim is preempted, it is still an economic injury. It may be a non-recoverable injury, or a non-compensable injury, or even a non-justiciable injury in federal court, but it is an injury under the state law doctrines articulated in Kwikset. If a sale has been taken away from my client, my client has standing to sue. They said, Mr. Weiss said it's a consumer law. Mr. Benson said it's a business law. It's actually called the unfair competition law. That is the title of the statute. And the Supreme Court has held over and over again. Here's one, Cruz v. Pacific Air, California Supreme Court. The UCL is intended to protect competitors as well as consumers from unfair practices. There may be occasions in which the injunctive power of the UCL is used primarily to reject injuries to competing businesses, and only incidentally for the public benefit. For as long as this statute has been on the books, competitors have been allowed to sue under both this and the Cartwright Act. And what you didn't hear, Your Honors, is any response to footnote 25 of Clayworth, which says the UCL standing is at least as broad as Cartwright Act standing, and there's absolutely no question that competitors have standing. If it is a business dealing requirement, as they say, then the answer is competitors have business dealings in the sense that they are in the marketplace for the same products competing for those sales from the same consumers. I don't think the court needs to go that far. If the court, on the other hand, were to hold that there is a business dealings requirement, it is going beyond where the California Supreme Court has gone, where any court in the post-Clayworth era has gone, all of which have found standing on our circumstances. We've submitted those cases to the court. It would really be striking out on this area of state law. Kwikset answers the case. Clayworth answers the case, too. The district court simply followed a line of precedent. Understandably, it was the precedent in his circuit, in Judge Selden's circuit, that he was bound to follow. But that precedent was wrong, and it's been overruled by the California Supreme Court. At the end of the day, this is a simple question of standing. And as the California Supreme Court said in Kwikset, again, it is a simple test. One, establish economic loss. We have a claim for lost profits. That counts under Kwikset. Two, show that the economic loss was caused by the unfair business competition. Lost profits are from diverted sales. That is causation under California law. There is no other requirement. There is nothing else necessary to get over the very threshold level of standing and let the case proceed so that the merits of the case, and they say we sued the wrong defendants and all that, they can sort all those things out. That's what pretrial practice, motion practice, and trials are for. This is a standing issue. Motion to dismiss purely on whether we can assert this claim. The California Supreme Court has said that can. The right answer is simply to reverse the dismissal, send the claim back so that it can be prosecuted along with the rest of them, and the merits of it will be sorted out. May come back to this court down the road, but it shouldn't be on this ground, this legally erroneous ground that the California Supreme Court has now rejected. Thank you. Any more questions? Any more questions? OK. Thank you, Mr. Perry. And thank the three of you. The case is taken into submission.